This is our fourth case of the day, number 21-65-53, Wall v. Rasnick, and Mr. Marshon, did I pronounce your name correctly? Marson, your honor. Marson, good to have you with us. And you represent the plaintiffs? That's correct, Mr. Wall. You can take off your mask right off. Thank you. May I proceed? Go ahead. Yes, sir. Thank you, and may it please the court. At its core, this case demands fair consideration of video evidence. The district court did not provide that consideration, and instead committed multiple reversible errors.      Multiple. Multiple. Multiple. Multiple. Multiple. Multiple. Multiple. Multiple. Multiple. Multiple. Multiple. Multiple. We identify, your honor, three critical issues in this case. Three. Three errors. Three reversible errors, in your view. That's right. All right. To start, your honor, the district court did not say a single word about the set of videos that were destroyed in violation of DOC's own preservation policy. And the district court then used the selectively preserved videos to form the basis for its dispositive factual findings on every claim and counterclaim in this case. With the court's permission, I would like to first address the spoliation issue, and then briefly address the district court's factual findings on the claims and counterclaims, and rest on the briefing regarding Officer Rasnick's failure to present sufficient evidence to prove his assault and battery counterclaims. To begin with the spoliation issue, Mr. Wall objected to the denial of sanctions, and he pointed to grievance documents that sought to preserve specific videos within days of the incident. These documents, after this serious incident. Now, somebody wrote, the magistrate judge, I think it was, said that they hadn't, he The magistrate judge, yes, your honor, found that Mr. Wall did not make timely, specific requests. Is that another error of law? Is that another error that you're complaining of? That's part of this? I think that is an error, your honor. Before the court even gets to that error, the district court didn't say a word about that order, about spoliation, about Mr. Wall's objection. Let me back up here. I've been talking too much this morning already, but both sides talk about a trial being conducted. How did we get to having a trial before a magistrate judge? The magistrate judge referred to this as a bench trial, your honor. A what? The magistrate judge referred to it as a bench trial, I believe. I think the district court... But magistrate judges don't conduct trials unless everybody consents. And it wasn't handled as a verdict or anything. After the trial, after the so-called trial was completed, there's a report and recommendations, which sounds like it's a regular referral with a report and recommendation on how to handle the case. But everybody talks about it being a trial in which your client was representing himself and the defendants were represented by the attorney general of Virginia. But nobody explained how a magistrate judge is conducting a bench trial. And this fellow Wall apparently called himself as the first witness, your client. Yes. He called himself. Did he cross-examine himself or examine himself? Do you know? I'm sorry? Did he examine himself? He initially testified about the events that occurred. I will say he asked for the appointment of counsel on multiple occasions. Those requests were denied. So he called himself as the first witness? Yes. Okay. So he was his own... Okay. Anyway, I don't understand this thing about a trial. You don't either, apparently. Well, technically, Your Honor, when the district court referred this, I believe this was being treated as an evidentiary hearing. So calling it a... They didn't call it an evidentiary hearing. They called it a trial, a bench trial. And I don't know where in the code a magistrate judge has authority to conduct a bench trial unless it's been referred or consented to and waived and whatever you have to jump through to get a trial before a magistrate judge. They normally don't conduct trials, I don't think, but I'm not a lot of experience with that, but maybe. But here they talk about a trial, but nobody explains how it came about. Nobody that I could find. Maybe it's in the details of the record, but I didn't roll into it. I don't know, Your Honor. I would point out, as you just said, Mr. Wall, or as you just referred to consent, Mr. Wall did not consent to a trial in front of... Did he ever ask for a jury or anything like that? He did not request a jury, and we are not raising an issue that there should have been a jury here. But we are raising issues regarding how the district... But he was always pro se, which meant he had to get some kind of liberal benefit or something of these papers. Absolutely. Go ahead. And after this hearing or set of proceedings that the magistrate judge oversaw, the magistrate judge issued a discovery order denying any spoliation sanctions, saying Mr. Wall didn't make timely, specific preservation requests, and issued that report and recommendation. And Mr. Wall filed an objection both to the report and recommendation regarding the claims and counterclaims for relief. Was he still pro se then? Yes, he was. And in that objection, he also specifically objected to the denial of spoliation sanctions, the denial of ECF number 75 and 77, where ECF number 77 was his motion for spoliation sanctions. And the district court said nothing about spoliation or that objection. And that, Your Honor, that the court can stop right there and reverse and remand because the district court appeared to not even consider Mr. Wall's objection and the critical issue in this case of whether to impose sanctions. That's a violation of Federal Rule of Civil Procedure 72, which requires district courts to consider timely objections. And when a district court overlooks a critical issue like spoliation, that is a basis for reversal and remand for the district court in the first instance to address the spoliation issue. And we just don't have that. Now, does the record support the proposition that certain videos were, in fact, destroyed? You said that earlier, that some were destroyed. Yes, Your Honor. And I'll point the court to what the magistrate judge herself recognized. This is coming from JA 1117 to 18, when the magistrate judge stated someone did go in, look at this while it still existed, referring to the video evidence, and saved portions of it and didn't save all of it. And the defendants did not contest that below. And when we look at Mr. Wall filing the grievance documents he did, he started doing that within five days of this incident, and he filed a regular grievance within 30 days. Those videos, according to the testimony of an intelligence officer, still existed up to 90 days after that incident. So he put everyone on notice by filing that with DOC that these videos were relevant to what anyone should have recognized, which was that there was a reasonable anticipation of litigation. Well, as to the existing videos, are they enough to save Mr. Wall's Eighth Amendment claim? The existing videos, if I'm understanding Your Honor's question correctly, if the existing videos are in the record, does Mr. Wall still have an argument that there was reversible error on his Eighth Amendment claim? Yes. He does, Your Honor. And that would allow me to talk about the second critical issue in the case, which is that when the district court did undertake fact-finding, unlike this foliation issue, it clearly erred when it placed dispositive weight on that preserved video and an erroneous view of that preserved video. That goes for both Mr. Wall's Eighth Amendment claims as well as the counterclaims in this case the two defendants brought. If we look at JA 1326, when the district court provided its reasoning to provide judgment on the claims about the Alpha Building and those counterclaims brought by the defendants, the district court found, and I'll quote here, that video evidence corroborates the officer's preserved video. And then the court described its view of that video. And it added that, based on this evidence, the magistrate judge correctly determined that Mr. Wall's version of events was not credible. That is clearly erroneous, Your Honor. The preserved video did not show much. And what it did show actually undermines the testimony, critical testimony from the defendants in ways the district court never even mentioned. Take for instance, Sergeant Large is one of those defendants. According to his account, Mr. Wall was swinging his fists and elbows before being pepper sprayed. And even after being pepper sprayed, Sergeant Large wrote in a report that Mr. Wall was striking staff with his fists. Even the little video we have does not show that behavior, even though it shows Mr. Wall's upper and lower body at various points in time. It was clearly erroneous, then, to find this video to be corroborative of the officers and to not mention these types of inconsistencies. On top of that, Your Honor, the district court actually used a lack of corroborating video against Mr. Wall without applying the very same skepticism to the defendants when the video not only failed to corroborate their testimony, but contradicted their testimony. That's the type of unequal scrutiny that reflects a defective fact-finding process in this case on that second issue of Mr. Wall's own claims and the defendants' counterclaims and how the district court clearly erred in granting judgment against Mr. Wall on all of those claims. I might just take a moment to say, too, that on the spoliation issue, to use the lack of corroborating evidence against Mr. Wall in that way, again, just brings us back to the fact that Mr. Wall, within five days of this incident, and I think this goes to his credibility, told everyone, look at these videos. What remedy are you seeking for what you say is the failure to consider the spoliation sanction motion? This court should reverse the district court's final order and remand to the district court with instructions to consider the spoliation issue and the possibility, as well, given all of the flaws we've pointed out in the magistrate judge's order in the record. And who would that affect? Would it affect all of the defendants or only those involved in the escort? It would affect all of the defendants, Your Honor, not just those involved in the escort. Why is that so? That is so, Your Honor, because the sanctions Mr. Wall sought, the videos that he sought, went to the credibility of all of the defendants in this case, including the ones who were not even the ones involved in that altercation, came forward here and provided any reason or explanation for why there shouldn't be a sanction against them. They never explained if they knew about these videos or didn't know about the videos. And the videos that even showed the escort, Your Honor, those videos would have shown Mr. Wall's condition as he was taken out of the Alpha Building. Those officers in the Alpha Building testified that they didn't see Mr. Wall lose consciousness. We point to even the existing video that shows Mr. Wall is being carried horizontally out of that building, and those cameras outside could have captured that as well. Can we or should we treat the district court's silence as an implied denial? This court should not do that. The reason why, Your Honor, is the district court itself, when it referred to objections being filed in this case, said that Mr. Wall has filed objections to the R&R, the report and recommendation. It looks like the district court just missed entirely and didn't consider at all the objection. And so I don't think that there's a reason provided by defendants here for this court to deem the district court to have considered the issue when it was so important, went to the heart of the case, and we don't even have a mention of the objection. Even if the court were to consider it, though, I think that just brings us to the flaws in the magistrate judge's order. And as I was responding earlier, when the magistrate judge found that the video evidence that Mr. Wall requested was preserved and presented at trial, and that Mr. Wall did not provide timely, specific requests that the defendants preserve additional video evidence, that's a clear error that tainted the entire analysis that's even in that magistrate judge's order. What segment of the video supports you the most? The most, Your Honor, I might come back to Sergeant Large testifying that Mr. Wall was pepper sprayed. I think from that A123 vestibule video, we can see that before that officer, that sergeant, entered the pod, Mr. Wall was face down with his left arm behind his back. I think that's quite supportive of Mr. Wall's testimony. If I could give one more example, I would point to the fact, and the district court didn't say a word about this either, even though Mr. Wall brought it up at trial, there's a moment in that video when an officer's arm rears back and goes toward Mr. Wall in a punching motion, which is corroborative of Mr. Wall's testimony that he was attacked, and that he was not in any way attacking or resisting these officers. How much time-wise is missing video, is there? I don't know an amount of time. The video that's missing starts with the recreation yards that were outside the Alpha building. It continues into the Bravo building, and it includes a vestibule video that was in that Bravo building where Mr. Wall was being held against a wall. And it even includes a camera cell, that's what defendants called it, where Mr. Wall was held for hours after the incident. You can't tell us how much missing video there is? Not a precise amount. Well, what, is there a range? Mr. Wall, in his grievance documents, he pointed to a one-hour range between 4 and 5 p.m. The one hour of video missing? That's what he first referred to. He's referred to that? That's right. Does the other side offer an estimate? Is there anything else in the record about the amount of time? I would point to that we know Mr. Wall was in that camera cell for a matter of hours. He was taken out of the camera cell around 7.30 p.m. I think he was placed in there sometime before 4.30 p.m. So that's the additional amount of time that footage in that cell could have captured with what his condition was when he was in that cell. And what's the permissible remedy for spoilation of evidence if these videos were destroyed intentionally, knowing that they had been requested, or knowing that they contained something adverse to the defendants? Knowing that they contained something adverse to the defendants and trying to prevent Mr. Wall from being able to use them, an adverse inference against each of the defendants would be a permissible sanction. Adverse inference to be considered by who? The magistrate judge in his so-called bench trial? The district judge in reviewing the report and recommendations? What? Both. Ultimately, both the magistrate judge and the district court, ultimately, if this court views what happened as an evidentiary hearing where the district court de novo had to make all the factual determinations, the district court would be the one to impose that adverse  But the district court didn't hear any of the evidence. I was just heard by the magistrate. Correct. The district court acted on that report from the so-called bench trial? That's right. Okay. Thank you. Thank you. Let's see now. Ms. O'Shea? Yes, good afternoon, Your Honors. Margaret O'Shea from the Office of the Attorney General on behalf of the Appellees. The defendants recognized at the outset of this case that it was really going to rise and fall on the credibility of the witnesses, and that is why, rather than submitting a motion for summary judgment or other dispositive pleadings, we elected to take this case to we call it a trial. It's actually an evidentiary hearing on referral. How did that comport with the statutory authority of a magistrate judge? Under the Magistrate Referral Act, a federal district court judge can refer an issue, a motion, or anything in the case to a magistrate to conduct an evidentiary hearing and present proposed... Why wasn't this called that kind of a thing rather than a bench trial? It should be called an evidentiary hearing technically, and that's what's referred to in the order of referral, which appears at JA 90. JA 90? JA 90. It's the order of referral signed by the district court judge referring things to the magistrate judge to take evidence... Was that made by Judge Couser? Yes, sir. That's what I thought. Yes. So that's what you're relying on? Correct. And it's commonplace in the Western District for the district court judges to refer hearings to the magistrate judges who conduct... It's a bench trial-like setting where they take evidence from the witnesses. The magistrate judges present that, their findings, and their credibility recommendations to the district court judge. The district court judge reviews it de novo and has the option to accept the credibility findings of the magistrate, rule on any objections to the report and recommendation, and reach a final disposition. If the magistrate judge does not like the credibility of decisions or disagrees with the credibility decisions of the magistrate, the district court judge retains the authority and, in fact, should, under the Raddatz case, I believe it is, a U.S. Supreme Court case, convene a new evidentiary hearing to hear the live testimony of the witnesses for itself before then going further and issuing a final disposition in the case. In this particular case, the district court judge, reviewing the body of evidence before the court, agreed with the credibility of determinations of the magistrate judge, saw no reason to overturn any of those credibility findings and enter judgment on behalf of all of the defendants. That decision is supported by ample evidence in the record. This was a two-day evidentiary hearing, 14 witnesses, 42 exhibits. How many days? Two days. Two days. Yes, sir. And it was an enormous body of evidence that was considered by the magistrate. And the, Mr. Wall, which represented himself, was he present? Yes. Was this in the courtroom down in Abington? Big Stone Gap. Big Stone Gap? Yes, sir. You went out to Big Stone Gap? Yes, sir. And Mr. Wall was present and the defendants were represented by the Attorney General of Virginia? Correct. Yes, sir. The findings of the magistrate judge, the credibility of determinations, the recommendations, and the District Court judge's rulings on those and decision to adopt the findings of the magistrate judge were supported by more than ample evidence in the record. This court has to look at those findings and that evidence through the appropriate deferential standard of review, which is in the light most favorable to the parties prevailing below and with due deference to the credibility of determinations of the defendants. Who was the party prevailing below? It was the defendant correctional officers. And before the magistrate? And before the District Court judge, yes, sir. Oh, you're talking about us reviewing it. I thought you were talking about the District Court's review. No, sir. All right. I'm saying in this court, it's standard. It's part of, you know, appellate canon, right, that the court judges don't decide what you would have done in the first instance. You look for clear error in the lower court's judgment and that clear error just doesn't exist here. I would like to talk first a little bit about the spoliation ruling. We go through the reasons in our brief as to why we believe it's procedurally defaulted, but bottom line on that, if you're going to argue something on appeal... Assume it's not procedurally defaulted. Yes. If it's not procedurally defaulted, if the court gets to the merits, because Mr. Wall did not sustain... He's pro se and he asked them to preserve the decide. He asked them to review it, but he didn't ask the defendants to review it. He sent in an informal complaint that was reviewed by a non-party and responded to by a non-party. There's no evidence that any of the 11 defendants specific to this claim, or actually any of the defendants, were made aware of that informal complaint or its contents. To sustain... To prove spoliation, you have to show that a party, if the plain language of Rule 3070 is a party, had a duty to preserve evidence within his control, neglected to do so, and the loss of that evidence caused prejudice to the party complaining about the missing evidence. It's multiple layers there. Mr. Wall did not carry his burden under any standard of review of establishing each and every one of those elements. He didn't show that there was a party with a duty to preserve that failed to adhere to that duty. He talked generally, before the magistrate judge, about whether the Department of Corrections had a duty to preserve, and that's the argument that's been presented by the other side. Well, that's what it would be. What would be the duty of the Department of Corrections? Well, the Department of Corrections is not a party. Rule 3070 requires a party. And I would also note the advisory committee notes make clear that just because an entity might have an independent obligation to preserve under its own policies or rules, that's not the same thing as whether there's a pre-litigation duty to preserve within the meaning of Rule 3070. Of course, we're arguing almost like it's de novo, but the district court didn't deal with it. The magistrate judge did, yes, Your Honor. The magistrate judge did in a report and recommendation, but the district court didn't. And it was supposed to be reviewing it de novo. No. Why? Because this was a referral of a non-dispositive discovery motion that gets reviewed for clear error by the magistrate judge under Rule 72B. It's not a report and recommendation that's reviewed de novo under Rule 72A. So you're saying the district court didn't have to even mention the spoliation objection? I'm saying, one, the district court judge didn't mention the spoliation objection because it wasn't properly presented. You didn't answer Judge Wynn's question. And then I'm saying, second, no, the district court judge doesn't explicitly say in its opinion, I'm ruling on the objection for purposes of appellate review that Mr. Wall stuck at the end of his objections to the report and recommendation, but the district court judge does say, I've reviewed that filing and I found four objections that are specific enough for me to address. So you have the spoliation objection. He doesn't address that at all, but you said the issue in this case is credibility, and it would seem to highlight the importance of having the video, some of which was not preserved. Important to both sides, Your Honor, which goes to the magistrate judge's unchallenged finding that there was no destruction of the evidence for the purpose of preventing its use in litigation. That is a specific finding that needs to be made before you can apply an adverse inference sanction against a party in litigation. There is no presumption of prejudice to either party that arises from the absence of evidence. How much video do you say is missing? State. How much does the state say is missing? It depends, Your Honor, on the type of evidence that they're talking about. The escort from one building to another building within the prison, that's a matter of minutes. I can't say exactly how many because we don't have it clocked or logged, but that would probably be a matter of minutes. You could, or I could, probably go through the control booth logbook entries that are part of the evidence and note when it says that Mr. Wall entered the building, left one building and entered the other building, and that would give you a timing estimate. So it's a few minutes of the escort. And then he claimed, if I recall correctly, that there were a few minutes when he was brought into the new building that weren't recorded on the surveillance video before the handheld video, which we do have, started. So that's a few more minutes there. If he is also claiming that he's entitled to the surveillance video, notwithstanding the presence of the handheld video, from the time that he arrived in the B building until he was taken to the camera cell, that's probably, I don't know, maybe 10 minutes or so. And then after he gets taken to the cell and the restraints are put on him, he's claiming that he needs the video from that. That's going to be... You tell me what he's claiming. I was asking you what you all acknowledge is missing. So I acknowledge that surveillance video would have likely captured some aspect of those various parts of Mr. Wall's movement within the prison. What I would like to emphasize, though, is that absent a showing of willful intent to destroy, to prevent the use of this video evidence in litigation, you can't get to an adverse inference type sanction. And that's the only thing that Mr. Wall asked for, really, apart from default judgment, which is even higher, depriving the defendants of the ability to defend their claims. Same thing... Well, there seems to be a question when you're dealing with... When you say credibility is the big deal, and then you have a video, as to whether there's an adverse inference that you can make, I mean, what is this video for? As I recall, I think in the record, and correct me if I'm wrong, the magistrate judge did mention that somebody certainly had noticed that he wanted these videos. Yes, but someone... So who was he supposed to ask for the videos, if not the prison? So it is the prison, but again, this goes back to who at the prison had knowledge that Mr. Wall might be raising these claims at a subsequent date. Well, he's in prison, and presumably a prisoner doesn't have free reign to go around and ask who he wants to ask. He typically has... They have rules, pretty strict rules in terms of who you can ask, and you would think if he maintains all of this that happened, and as you say, it's credibility, and he says, we want the videos, but it seems like me, everybody would quickly realize the videos is what you want. Let me ask you this. Even the video that was not preserved, did anybody ever see it? That's not clear on the record, sir. I'm asking you the question, to your knowledge, did anybody ever see it? Let me put something that's in the record. Is there anything in the record to say they didn't see it? The evidence is not clear, and I'll explain why I'm not trying to avoid your question. That's okay. The intel officer, intelligence officer Bentley testified at trial. He was asked, what is standard when you get an informal complaint, like what are you supposed to do? Officer Bentley said, well, you're supposed to look at the informal complaint, look at the video that corresponds to it, save anything important. Common sense tells you that, if you got an altercation, and you see a video, that's like if you see someone rob a store, and they say they got a video out there, it seems to me you'd go take a look at that video for a lot of reasons, and so what you just said is that the general policy is you would go look at the video. So is there anything in the record to say they did not look at the video in accordance with what common sense would say you would do? Again, investigator Bentley is the one who responded to the informal complaint, and he said he just couldn't remember. So he couldn't remember. But he can remember what he would think ordinarily an officer who is thinking straight would do, and that is there's nothing to indicate he did not see it. And so you would, if he saw it, and there's something that potentially could help one way or the other, you would think that would give rise to preserving. You would think, Your Honor, but also I'm aware and I believe that intelligence officer Bentley testified to this as well, is back then, we're talking a good seven years ago I think, the Department of Corrections would look at the videos, and if they didn't actually show anything, they wouldn't save them. That practice has been changed now as litigation has evolved. Well that leads to another question, I mean, they preserved some of them, and so then the question is, why did you preserve some and not others, particularly in the face of what's going on here? It certainly gives you some indication that maybe that was intentional, whether it was or was not, but it's like the Nixon tape, you know, if you missed a few minutes there, you wonder what was on that tape, because I assume we'll never know that answer, and I don't want to go there, but it doesn't sound like we're going to know this answer either as to what's on those tapes, because they're destroyed, right? Well, recorded over in the ordinary course of business, but yes, sir, they're not available. And there's no technology in recording, you know, at least the young folks tell me, that nothing is destroyed, at least in the digital world, I don't know how the tapes work, but if you record over tape, that doesn't necessarily mean it's gone, it may not be able to be retrieved, you have the technology to do it, is what you're saying? That's correct, it's not retrievable after it's been written. Is that in the record? Yes. Was there a part of this so-called trial that was directed to a determination of the missing videos, the spoilation question, of how it came to be missing, and what happened to it? It's kind of interwoven throughout the testimony, because... It was not, there was not a focus on, did everybody that had anything to do with maintenance of these things get on the bench and testify? No, sir. Well, then we could ask for a full-blown hearing to determine what happened to the record, to the videos. The pre-trial... To get to the bottom of this thing. The pre-trial discovery motion had been referred to Judge Sargent for disposition along with the evidentiary hearing. It was the opportunity of both sides to present evidence on videos, missing videos, and so on and so forth. Mr. Wall, as the party seeking spoliation sanctions, he's the party who had the burden... He's the pro se fella. And you talked about them filing objections late, and didn't calculate right yourself, the Attorney General's office, didn't allow for the mailing time that they found on you. He's the pro se plaintiff until Georgetown got into it. He gets the benefit of liberal construction of things, allegations, and application of rules, and all that stuff. I understand that, but it's the party who bore the burden of proof. And he's up against the Attorney General of Virginia, and a group of lawyers from the Attorney General's office, in a so-called bench trial, which wasn't a bench trial, as you're saying now. Anyway. Maybe there ought to be a hearing just to try to figure out what happened to the destroyed videos and how it happened. Maybe they could retrieve some of them, get some experts, and see if they could dig these things out. See if anything can be preserved, ascertained. Isn't that about the furthest we could go with this? In terms of the remedy, if there is a remedy, we found, okay, there should have been more done. Basically, it seems to me what's being asked is beyond the sanction, it's not saying go ahead and enter a sanction, it is to go back and go through the procedures and make that full determination as to whether this motion should be granted or not. Yeah, they say the district judge didn't rule on spoilation, but he didn't have the information because he didn't have the benefit of a full-blown hearing before the magistrate to figure out what happened to everything. He had the testimony from the intelligence officer who testified about the procedures. He had testimony from Mr. Wall about what Mr. Wall said he did that he thought was the biggest trigger. He wasn't, Mr. Wall had nothing to do with making the videos. He was the one that was on the receiving end, part of it, or on the giving end, from your standpoint. He was involved in it. Yes, sir, but prosaic or not, he bore the burden of showing a party, allowed the destruction of evidence with the intent to deprive the other side of its use in litigation, and that evidence just wasn't there, and he had the opportunity to ask all of the defendants about that particular issue, and he did not. The magistrate judge found as a factual matter, this evidence was not lost because somebody wanted to keep it out of Mr. Wall's hands. That is what was required to be shown in order to get to the adjudicator. But you just basically told us earlier that not everybody testified about that particular issue, that the facts weren't ascertained. But Mr. Wall had the opportunity to ask them about that and did not. Bottom line, the question of whether or not Mr. Wall should have been represented by counsel, that's not an issue that's been raised on appeal. It's not before the court. This is a civil case. He was proceeding. He's got counsel now. He's got the Georgetown litigation clinic. Absolutely. But to get to a finding of prejudice, the only prejudice he argued is that video would have supported my version of events. So in order to apply the sanction to keep it out of Mr. Wall's hands. That would be the thing to find out, because you had a counterclaim that you granted relief on to make sure that we know what the facts are. If there's an adverse inference to be drawn, the counterclaim judgment is probably flawed. I disagree, because the counterclaim preceded in time. The counterclaim pertains only to events within the housing unit for which there is retained video. So the loss of evidence has nothing to do with the counterclaims. But I would take... Well, we're not in a position to agree with you or not, because you don't have the record. You don't have a... You didn't have a full-blown hearing about the loss of evidence or destroyed evidence. The whole instance of credibility, as I understand, Mr. Wall said he felt unconscious. But then the officers said, oh, no, he was conscious and resisting the entire time. Well, there is a video in this thing, and it shows him being, Mr. Wall being carried. He has his hands and feet up in the air, and his head is parallel to the floor. I don't know what he is, but he doesn't look like to me he's doing any resisting in this video. And I'm only just saying that video evidence looks like it's pretty important in terms of credibility, because here you have an instance where that video that's being shown, and of course, the district court, they don't mention this. But that's the problem. And when you send videos up here, you take a look at them, because it's part of the record, and you say, wait a minute, this guy doesn't look like he's resisting. If you're looking at the testimony and screaming and kicking or whatever, or conscious, it's like he's out. That's what it looked like. I'm not saying what he is, but I'm saying... But that only goes to say that when you're measuring credibility, that gives you more of a pause and says, you need to conduct that full-blown hearing that Judge King is talking about were forgot to the ones that you didn't preserve. My time has expired. May I respond to your Honor briefly? As long as you get questions, you keep answering. I don't want to tread on anybody's toes. I agree, but I would also say, Your Honor, that the evidence that was preserved from the video, from the housing unit, Mr. Wall testified, well, I was there, hands out, not doing anything at all. They took me to the ground, and then they started punching me in the head. They were kicking me in the head while I lay there unconscious. That didn't happen at all. If that happened, you absolutely would have seen officers up and kicking him in the head. There's no way that wouldn't have been captured by that surveillance video in the housing unit. Well, it's sort of like a jury thing. You've got some evidence from the video that's going to support his version, but I'm saying here is something here that supports Mr. Wall's version. It goes to that credibility thing that seems to be so clear until you look at it and say, wait a minute, these guys aren't exactly telling it as it looks on the video either. Again, I'm not going to try to make that determination on whether it happened or not, but I'm just saying that these videos are supporting there's a credibility problem. When you know there is a segment that he maintains is fairly crucial. I don't know what it would show, and it's gone, and you wonder why you have these, why you don't have this. He made a request. Why did you preserve these? I guess because he made a request, and all of these are the ones he made the request for. It really calls into question at least somebody ought to ask some more questions. I understand your other position. I would say the part of the video evidence that you're referring to is after he's been taken out of the housing unit. He's plainly bent over. There's an officer who actually has his hand on his neck helping hold him down, not holding him up. His hands and feet are up in the air as you're going. The video speaks for itself. We probably can describe it all day long, but it's there. That kind of goes to the credibility determination. We don't have all the video. You're talking about the video, but we don't have all the video. Our lawyer from Georgetown says there's more than an hour missing. But it's not just the video that the magistrate judge and then the district court judge considered when deciding who to believe here. The magistrate judge listened to Mr. Walden. We don't know what's on the missing video. We don't know what happened to the missing video. But the magistrate judge considered the demeanor. Missing videos, like missing tapes, are suspect circumstances. But only if there's an intent to deprive the advisor of the video specifically. But that's what the hearing would have to develop. Information lost through negligence alone may have been favorable to either party. It could be all negligence, that's right. It could be the party that lost it, which is why we only have a negligent loss of information. You cannot impose an adverse inference. You cannot impose a presumption of prejudice. And that's exactly what Mr. Wall is asking for. It's not available to him because the underlying factual circumstances aren't there. No party to this case intentionally destroyed or allowed the destruction of evidence within their control for the purpose of depriving its use in litigation. So we don't know what the video would show, but we do know things that Mr. Wall testified to that did not, that rung hollow with the magistrate judge. And she determined basically that he was lying. And that was well within her discretion. She heard him testify. She heard the officers testify. And ultimately it was her call, her decision, that he wasn't telling the truth. On a clear error of view to this court, which is what we have, that is not reversible error. Of course, that was never ruled on by the district court. You're telling us all this stuff? That objection was ruled on by the district court judge. The only thing that wasn't- The spoliation was not ruled on. Correct, because- I was taking the chance. Exactly what you were talking about was the spoliation. So I was talking about the overall credibility. Well, but the spoliation relates to the credibility is what they argue right there now. And I take a slightly different position that I think that the spoliation only pertains to the excessive force and bystander liability claims of the 11 defendants involved in that escort. Who does the grievance run to? It goes to the intelligence officer who testified at trial. I'm sorry. Did you mean the informal complaint or the regular grievance? I don't know the difference. You're asking me questions. I get to answer the questions. I get to ask the questions. I just want to make sure I make that pretty clear. I ask them. The informal complaint where Mr. Wall said, the excessive force continued while I was being taken from one housing unit to the other. Check out these videos. That goes to an intelligence officer. It didn't go to any of the- An intelligence officer works for the Department of Corrections. He does. That's right. And- He's the- I don't want to- All right. We've given you five extra minutes and now you- Mr. Marchant. All right. Thank you, Your Honor. We should be calling you professor? Mr. Marchant is fine, Your Honor. You teach at Georgetown, don't you? I'm a fellow with Professor Hashimoto in the clinic. We really appreciate y'all's work. But you go right ahead with your rebuttal. Thank you, Your Honor. Just a few quick points on rebuttal. I'd like to start with what Mr. Wall did. Judge King, you asked at the beginning of the questioning of my friend on the other side if Mr. Wall asked to preserve these videos. And my friend said that Mr. Wall asked for review of the videos, if I heard correctly. If the court looks at JA116, it'll see that all Mr. Wall had to do to trigger DOC's preservation policy was reference these videos, and he did that. And that's the policy, JA116? JA116 includes changes to the policy which implemented this key provision. Mr. Wall also included the full policy with his objection as well. And so that triggered the duty to preserve, and we know that someone went in, as the magistrate judge said, someone went in, looked at this while it still existed, and some was saved and some was destroyed. That takes me then to questions that the court has had about the remedy for the district court's silence and the failure to even consider this critical issue. A full-blown hearing, a full-blown inquiry should happen, Your Honor. It should have happened to begin with, and I think that that is something that should happen on remand. My friend on the other side said that Mr. Wall had the chance to ask questions of that intelligence officer, for instance, who was called to testify. I just want to point out that Mr. Wall identified the policy I just referred to to the court and asked that intelligence officer about the policy and whether Mr. Wall referencing footage required that the video was to be saved, and the officer answered on JA802, I'm not positive on that, but once I turn over the incident to the special investigation unit, I'm actually assisting them with the investigation. What do you do with opposing counsel's argument that this correlation issue must be done by one of the parties? This answer by this intelligence officer, Your Honor, shows why that's a bright-line rule that has not been the common law, that is not in Rule 37, and that would create a dangerous incentive, as other courts have recognized, because it would put the burden on adversely affected parties like Mr. Wall to pinpoint the exact party who was responsible for the destruction that everybody agrees happened, everybody agreed in front of the magistrate judge happened, and that individual party, even when that party has a special relationship with the Department of Corrections, and that Department of Corrections destroys the evidence, that would allow no sanctions in that case because the department was the one to destroy the evidence, and that would create an incentive, as courts have recognized, for Departments of Corrections to destroy videos, to spread the responsibility over controlling them throughout an institution without facing any repercussion in the Section 1983. Speak to the evidence of prejudice sufficient to warrant an adverse inference. I'll start with adverse inference, Your Honor, by saying that we have selectivity here. We have a conscious choice to save some videos and let others be destroyed. This wasn't a routine business practice that led to all of them being saved or all of them being destroyed. And with that selectivity, we have two other facts. One, that there was a breach of DOC policy here, that policy Mr. Wall cited himself. And two, even the magistrate judge recognized this was a recurring issue at DOC. That's circumstantial evidence that there is an intent to deprive him of evidence at trial here. But I want to point out with Your Honor's question as well, because my friend on the other side talked a lot about bad faith and an adverse inference, that's not the only sanction that's available here. District courts have a lot of discretion that Rule 37 provides them. And another sanction, even short of an adverse inference, would have had a dramatic effect on this case. The district court could have considered the circumstances surrounding the destruction of these videos when making its ultimate factual findings. And it could have done two things even short of an adverse inference. It first could have said that it's not going to use the curated videos to credit the officers because of the circumstances of the destruction of others. And it second could have said that it's not going to use the absence of video evidence against Mr. Wall because he was trying to corroborate his testimony from day one. So those are other sanctions that are available on remand as well. What's the remedy that you want? A reversal, Your Honor, of the final order and its ruling on all the claims and counterclaims and a remand for the district court to, one, conduct a proper spoliation analysis, including a full-blown inquiry as Your Honor referred to earlier. Two, to undertake a reasoned fact-finding process when it comes to the actual claims and counterclaims in this case. Not to do what the district court did before, which is to put all the weight on an erroneous view of the preserved videos. And all I would add, Your Honor, just because I've rested on the briefs earlier, but we're also seeking outright reversal for this court to order the entry of judgment against Officer Raznick because he did not even present sufficient evidence for his assault and battery counterclaims. And I see that I'm over my time. I just want to give you time to tell us what you want. I think the only thing that I would add, Your Honor, to the questions about whether this was a bench trial or an evidentiary hearing, part of what can and should happen on remand at a hearing is that the district court can hear from witnesses and can make reasoned credibility determinations unlike the clearly erroneous ones that we have right now. So you don't say there's any difference between an evidentiary hearing and a bench trial? I think there is a difference in terms of... Go ahead. Sorry, Your Honor. I think at a bench trial, when I think of a bench trial, there's no de novo review by a district court. Well, a bench trial, the judge renders the verdict. Right. You don't have any findings, recommendations or reports about findings. You have a verdict. I mean, you can call them the findings and conclusions of the law, but after a bench trial, there's a verdict rendered by the judge. That concludes it. It's the way I've always understood it anyway. But what I want to say is we really appreciate the work of the Georgetown Litigation Clinic, if that's the right name, Appellate Litigation Program. Georgetown University Law Center, we really appreciate what you've all done and we commend you for it. And what are you all going to do if we send it back under your request for a hearing? Are you going to abandon your client or are you going to stick with your client? We're an appellate litigation clinic, Your Honor. But what I can say is that we are committed to try and find trial counsel for Mr. Wall. But you're not committed to stick with him? I can't speak for the clinic's capacity to take on a trial, but I certainly would say that the clinic will take seriously and will endeavor to find trial counsel for Mr. Wall to make sure that he is not continuing to proceed pro se. You didn't hear in the earlier case we had here today that you weren't present for. I chastised the lawyer a little bit for threatening to abandon his client, basically, withdrawing the case. I never liked that from lawyers. Again, the case, I always thought they'd stick with it. That's the way we practice law where I came from. I would agree with Judge King in the fullness of an educational experience. To not be involved in the trial of this and to do here is a bit different than the firms who do primarily nothing but appellate litigation. I mean, there's an experience here. And to talk about it, I will tell you, I know being an appellate lawyer is an art and is totally different, but if you've actually been out there trying the cases, there's an input that you bring to the experience that you really can't get just reading the records and briefs. You've got to know what you're talking about. To have actually been in that court, as you probably heard Judge King allude to several times here, his experiences of being on both sides of that barrel. But anyway. Absolutely. Thank you. We appreciate what you all have done. We appreciate the Attorney General's office work as well. And we'll take a matter under advisement. And I'll tell the Georgetown folks, if the Fourth Circuit, when we conclude arguments, it's a general matter, we come down and re-counsel the treasurer, Stu, and we briefly talk to you and introduce ourselves. We can't do that because of the pandemic and the way we're handling that. But next time, we hope to be able to do that. And with that, Madam Clerk, we'll adjourn court until 9.30 tomorrow morning.
judges: Robert B. King, James Andrew Wynn, Henry F. Floyd